Entered on Docket
January 16, 2015
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: January 16, 2015

_____
**THOMAS E. CARLSON**
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>DEBORAH MYNETTE MCINTOSH,<br><br><br><br><br>            Debtor. | Case No. 13-11774 AJ<br><br>Chapter 13 |

**MEMORANDUM DECISION RE FEE APPLICATION OF DEBTOR'S FORMER COUNSEL**

On October 21, 2014, the court held a hearing on the following three matters: Debtor's motion to dismiss the chapter 13 case; the fee application of Debtor's former counsel; and the motion of Debtor's former counsel to have the proceeds of the sale of Debtor's residence distributed to the Chapter 13 Trustee. Paul M. Jamond appeared for Debtor. David N. Chandler, Jr. and David N. Chandler, Sr. appeared as Debtor's former counsel. Lilian G. Tsang appeared for David Burchard, Chapter 13 Trustee. Brian H. Tran appeared for secured creditor, CalHFA Mortgage Assistance Program ("CalHFA").

At the hearing the court stated it would grant Debtor's motion

MEMORANDUM DECISION RE FEE APPLICATION
OF DEBTOR'S FORMER COUNSEL         -1-

to dismiss. For the reasons set forth below, the court now denies the former counsel's motion regarding distribution of sale proceeds, and denies Debtor's former counsel all fees.[1]

**BACKGROUND**

Debtor filed bankruptcy to deal with attorneys' fees she incurred in contesting a will. She owed more than $400,000 to Carr, McClellan, Ingersoll, Thompson & Horn ("CMITH"), and had given CMITH a deed of trust on her residence to secure repayment of that debt.

Debtor hired David N. Chandler, p.c. to file a Chapter 13 case for her. That law office is a father-son combination of David N. Chandler, Sr. and David N. Chandler, Jr. Both have extensive bankruptcy experience. It appears that virtually all of the work on this case was performed by David N. Chandler, Jr. ("Chandler").

The central issue in the present matter is whether Chandler violated his duty of loyalty to his client. While he represented Debtor, Chandler argued that the CMITH deed of trust should be invalidated under state law, that this deed of trust should not be preserved for the benefit of the bankruptcy estate, and that the equity created by the invalidation of the CMITH deed of trust should instead be used to pay Debtor's homestead exemption. After he was discharged by Debtor, Chandler argued that the CMITH deed of trust was avoided under section 544 of the Bankruptcy Code, that the deed of trust was automatically preserved for the benefit of the bankruptcy estate, that Debtor was not entitled to receive any portion of the proceeds of the sale of the residence in respect of

---

[1] All matters prior to confirmation were heard by Judge Jaroslovsky. This post-confirmation proceeding was assigned to the above-signed Judge by Judge Jaroslovsky.

**MEMORANDUM DECISION RE FEE APPLICATION**
**OF DEBTOR'S FORMER COUNSEL**          -2-

her homestead exemption, and that the sale proceeds must instead be used to pay the claims of unsecured creditors (which would mean that the proceeds would be used to pay Chandler's fees).

Chandler filed a chapter 13 petition for Debtor on September 18, 2013. He devised the following four-part strategy for dealing with the CMITH deed of trust through that bankruptcy case.

First, Debtor claimed a homestead exemption in her residence. That claim of exemption was allowed when no timely objection was filed.

Second, Debtor filed an adversary proceeding in which she alleged that the CMITH deed of trust was invalid under Rule 3-300 of the California Rules of Professional Conduct, because CMITH had not warned Debtor to seek advice from separate counsel before engaging in the transaction with her attorneys. Docket No. 31. The complaint sought such relief solely on the basis of Rule 3-300 and did not seek relief under any provision of the Bankruptcy Code.

Third, Debtor filed a motion to sell her residence free and clear of the CMITH deed of trust on the basis that the validity of that lien was in bona fide dispute. Docket No. 58. In describing the dispute concerning the validity of the lien, the motion cited only Rule 3-300.

Fourth, Debtor filed a chapter 13 plan that also sought to disallow the secured claim of CMITH and preserve the resulting benefit for Debtor. Docket No. 21. Section 6.01 of the plan provides that if Debtor prevails in invalidating the CMITH deed of trust, "the Debtor shall be entitled to funds representing her allowed homestead exemption" after payment of the remaining deeds of trust.

To explain the significance of what Chandler did next, it is necessary to summarize certain provisions of the Bankruptcy Code. First, various sections of the Code enable a bankruptcy trustee to set aside transfers made by the debtor that the debtor could not set aside under non-bankruptcy law. 11 U.S.C §§ 544, 547, 548, 549. Second, when a transfer is avoided under one of these sections of the Bankruptcy Code, it is automatically "preserved for the benefit of the estate" under section 551. In the present case, the CMITH deed of trust was a transfer by the Debtor. If that transfer was preserved for the benefit of the estate, the deed of trust would not go away and the estate would step into the shoes of CMITH as the holder of the secured claim against the Residence. If the CMITH deed of trust was instead declared unenforceable under Rule 3-300, then the CMITH lien against the Residence would simply disappear. Third, a debtor can claim an exemption in property that was transferred pre-petition and recovered by the estate if the pre-petition transfer was an *involuntary* transfer. 11 U.S.C. § 522(g)(1)(A).

As noted above, it was Debtor's objective to obtain the net proceeds from the sale of her residence in respect of her homestead exemption. In the legal context just described, this objective was furthered by (a) using Rule 3-300 to invalidate the CMITH deed of trust, and (b) urging that the CMITH deed of trust was not a voluntary transfer. Invalidating the lien under Rule 3-300 would create equity to which the homestead exemption could attach by causing the CMITH lien to disappear. Showing that the CMITH deed of trust was not a truly voluntary transfer would eliminate a possible objection to the homestead exemption.

On December 11, 2013, the court held a preliminary hearing regarding confirmation of the chapter 13 plan. Judge Jaroslovsky asked whether the CMITH lien would be preserved for the benefit of creditors if it were invalidated. In response, Chandler argued that the CMITH lien would not be preserved for creditors because it was not being avoided under the Bankruptcy Code.

> We're not avoiding [the CMITH deed of trust] under a rule that would require preservation for the benefit of the estate. It's a void [sic] for clear violation of rule 3300...."

Chandler also argued that the transfer was not truly voluntary (which means the Debtor could exempt the value created by setting aside the CMITH deed of trust).

> Well, the idea is this: by virtue – 3300 has to do with informed consent. When you make a voluntary transfer and you then avoid it, it would typically be for the benefit of the estate. But when you have a failure under 3300 then you don't have a consensual transfer because it wasn't voluntary by definition, you are not voiding it under the Bankruptcy Code, you are voiding it under the Rules of Professional Conduct.

On January 21, 2014, Judge Jaroslovsky approved the sale of Debtor's residence free and clear of liens. Docket No. 71. The approved sale price was $750,000. Taxes and two deeds of trust senior to the CMITH deed of trust would be paid upon closing. The remaining sale proceeds would be held in escrow pending resolution of the dispute regarding the CMITH deed of trust. Docket No. 91.

In early February 2014, Debtor reached a settlement with CMITH. Under that settlement, CMITH agreed to reconvey its deed of trust, to release its *in personam* claim against Debtor, and to pay Debtor $10,000. Docket No. 86. Judge Jaroslovsky approved this settlement in an order entered on February 10, 2014. Docket

No. 91.  Chandler retained the $10,000 in payment of fees owed him by Debtor.

On February 12, 2014, Chandler filed a First Amended Chapter 13 Plan that implemented the CMITH settlement.  Docket No. 93.  The amended plan provided clearly that the sale proceeds freed up through the invalidation of the CMITH deed of trust would be used to pay Debtor's homestead exemption.

> Closing costs and the secured claims of Bayview Loan Servicing, PNC Bank, CalHFA Mortgage Assistance Corp. and any amount due the Napa County Tax Collector shall be paid by the Debtor directly from escrow with proceeds from the sale. *The Debtor shall receive net proceeds from the sale on account of her homestead exemption.*

Section 6.01 of Amended Plan (emphasis added).

The amended plan was unopposed when it came before the court for confirmation on February 12, 2014.  The written order confirming the plan was entered on April 3, 2014.  Docket No. 103. No appeal was filed.

The sale of the residence closed in March 2014.  As of the October 22, 2014 hearing, $57,712 remained in escrow subject to the $21,000 secured claim of CalHFA and Debtor's homestead exemption.

A disagreement arose between Debtor and Chandler during the summer of 2014, presumably over the payment of fees.  Chandler had received a pre-petition retainer of $3,500.  He had also received the $10,000 settlement paid by CMITH.  The confirmed plan approved additional fees in the amount of $3,000 to be paid at the rate of $273 per month for 60 months.  Chandler has received $2,093 through these plan payments.  From all these sources combined, Chandler has received the sum of $15,593.

On August 19, 2014, Debtor discharged Chandler and substituted

**MEMORANDUM DECISION RE FEE APPLICATION OF DEBTOR'S FORMER COUNSEL** -6-

Case: 13-11774    Doc# 132    Filed: 01/16/15    Entered: 01/16/15 16:35:37    Page 6 of 14

Paul M. Jamond as her counsel. Docket Nos. 109-10.

On August 27, 2014, Chandler filed the fee application at issue here, seeking fees and costs in the amount of $75,671 (after application of the retainer and payments previously received). Docket No. 113.

On September 5, 2014, Chandler filed the Motion for Order Directing Escrow Company to Pay Net Sales Proceeds to Chapter 13 Trustee (the "Distribution Motion"). In the Distribution Motion, Chandler states:

> The [CMITH] deed of trust was avoided under the authority of section 544 of the [Bankruptcy] Code. 11 U.S.C. 544. The avoided [CMITH] Deed of Trust was automatically preserved for the benefit of the Bankruptcy Estate. 11 U.S.C. 551.

Docket No. 120 at page 2, par.8.

In his declaration in support of the Distribution Motion, Chandler makes the following additional statements:

> I argued that, upon avoidance of the [CMITH] Deed of Trust, the subordinate CalHFA Deed of Trust would improve position and the Debtor would have an exemption in the remaining equity.

Docket No. 125 at 4.

> Following confirmation and after conducting legal research in the months of June and July 2014, I reached the conclusion that the Court was correct and that preservation of the avoided [CMITH] lien for the estate occurred automatically. However, in so concluding, I was mindful that my office's interest in the case had become adverse to that of the Debtor on the issue of disposition of sale proceeds.

Id. at 8.

> I tried to explain [to Debtor's new counsel] the complexity of the situation and the legal issues involved, including § 522(g) and § 551.

Id. at 11.

The reference to section 522(g) suggests that Chandler was now arguing that the CMITH deed of trust was a voluntary transfer.

At the October 21, 2014 hearing, Chandler argued that none of the remaining proceeds should be distributed to the Debtor in respect of her homestead exemption. Chandler argued that the CMITH deed of trust was preserved for the estate under section 551, because it had been avoided under section 544 of the Bankruptcy Code. He said this despite the fact that the adversary complaint he drafted sought to avoid the CMITH lien solely on the basis of Rule 3-300 and never mentioned section 544. Docket No. 31, ¶¶ 13-16, 25-31. Chandler argued that the preservation of the CMITH lien left no equity to which the homestead exemption could attach. He said this despite the fact that the confirmed chapter 13 plan he drafted specified that sale proceeds were to be used to pay Debtor's homestead exemption.

**DISCUSSION**

**A.  Motion to Distribute Sale Proceeds to Chapter 13 Trustee**

Chandler argues that the net proceeds from the sale of Debtor's residence should be distributed to the Chapter 13 trustee, because the CMITH deed of trust was preserved for the benefit of the estate and all of the net proceeds are fully encumbered by that preserved lien. This argument fails for two reasons.

First, the CMITH deed of trust was not preserved for the benefit of the estate under section 551, because that section applies only to transfers avoided under sections 522, 544, 545, 547, 548, 549, 724(a), or 506(d) of the Bankruptcy Code. As noted previously, the adversary proceeding under which the CMITH deed of trust was invalidated was brought solely under Rule 3-300 of the

California Rules of Professional Conduct, and did not seek to avoid the lien under any of the provisions of the Bankruptcy Code listed in section 551. Docket No. 31, ¶¶ 13-16, 25-31.

Second, the confirmed chapter 13 plan provides that the CMITH deed of trust is not preserved for the benefit of the estate. As noted previously, section 6.01 of the plan provides that if Debtor prevails in her dispute with CMITH, the CMITH lien is to become void and the resulting increase in equity is to be used to pay the fourth deed of trust and Debtor's homestead exemption. The treatment of a secured claim and the disposition of the collateral securing that claim are proper subjects of a chapter 13 plan. § 1322(b). The order confirming Debtor's plan was not appealed, is now a final order, and is *res judicata* regarding the treatment of secured claims and collateral provided for in the plan.[2] Moreover, under section 1330, the order confirming plan cannot be revoked, because it was entered on April 3, 2014, because neither Chandler nor any other party have sought revocation of that order to date, and because more than 180 days have passed since entry of the order.

---

[2] Chandler argued at the October 21, 2014 hearing that the order confirming plan specified that the validity of the CMITH lien had not been resolved. Chandler apparently relied upon paragraph 2 of that order, which states: "No lien on real property shall be removed, avoided or extinguished except by adversary proceeding pursuant to Rule 7001(2) of the Federal Rules of Bankruptcy Procedure or contested matter pursuant to Rule 3012 of the Federal Rules of Bankruptcy Procedure." Chandler's argument is unpersuasive for at least two reasons. First, Debtor filed an adversary proceeding to avoid the CMITH lien, and it was through the settlement of that adversary proceeding that the lien was avoided. Second, under the settlement, CMITH reconveyed the deed of trust, so that the lien was not avoided through confirmation of the plan. The plan specified the effect of the invalidation of the lien, and that effect was not called into question by the language of the confirmation order.

**MEMORANDUM DECISION RE FEE APPLICATION OF DEBTOR'S FORMER COUNSEL** -9-

The escrow agent will be ordered to distribute the sale proceeds it is still holding (approximately $57,713) as agreed upon by the Debtor and the holder of the remaining deed of trust: $21,000 to CalHFA Mortgage Assistance Corporation in respect of its fourth deed of trust; the remainder to Debtor in respect of her homestead exemption.

**B.  Chandler Fee Application**

The principal question regarding Chandler's fees application is whether he should be denied fees because he violated his duty of loyalty to his former client.  More specifically, the question is whether Chandler is now permitted to argue that the CMITH deed of trust was preserved for the benefit of the estate (a position that hurts his former client and helps him) after he previously argued on behalf of this client that the CMITH deed of trust was **not** preserved for the benefit of the estate.  The issue is of great importance to Debtor.  If the CMITH lien is not preserved for the estate, as Chandler argued when he represented Debtor, Debtor will receive approximately $36,713 in respect of her homestead exemption.

Chandler contends he is now free to argue that the CMITH lien was preserved for the estate, because he advised his client of the conflict of interest and advised her to seek separate counsel.  He offers no evidence that he obtained a written waiver of conflict of interest that would enable him to represent an interest adverse to Debtor on this matter.  Chandler lays great stress on his assertion that the court has not yet decided whether the lien was preserved

for the benefit of the estate,[3] and that his current position is legally correct.

I determine that Chandler has blatantly violated his duty of loyalty to Debtor, and that he should be denied all fees as a result of his misconduct.

At the outset, it is important to note that Chandler's breach of loyalty is not in his attempt to collect fees from Debtor. An attorney must always be free to pursue his client for fees if he or she does so properly. Chandler's breach of duty arises from the fact that he is taking a position adverse to his former client on an issue on which he previously represented the client and that is separate from the fees he is seeking to collect. With respect to that separate issue, it does not matter whether the court has decided the issue, or whether the position Chandler is currently taking is legally correct. An attorney who advocates a position on behalf of a client cannot switch sides simply because the issue has not yet been decided and/or he now believes the position he previously asserted on behalf of the client is wrong.

An attorney's duty of loyalty is defined by state law. Under California law, that duty is defined by the following principles. First, the duty of loyalty continues after the client has discharged the attorney. Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821 (Cal. 2011). Second, an attorney "may not do anything which will injuriously affect [the] former client in any matter in which [the attorney] formerly represented [the client]." Id. This is so even if the action injurious to the former client does not involve the use or disclosure of confidential information.

---

[3] The court has determined that the lien was *not* preserved. See note 2, supra.

**MEMORANDUM DECISION RE FEE APPLICATION**
**OF DEBTOR'S FORMER COUNSEL** -11-

People ex rel. Deukmajian v. Brown, 29 Cal. 3d 150, 156 (Cal. 1981). Third, the duty of loyalty is not limited to situations in which the attorney represents a new client. An attorney breaches the duty of loyalty in taking action on his or her own behalf, if that action is injurious to a former client on a matter in which the attorney represented that client. Oasis, 51 Cal. 4th at 822-24.

As noted above, Chandler argued to this court in December 2013 that the CMITH lien was not preserved for the estate and that the equity created by removing that lien would be used to pay Debtor's homestead. The court entered an order to that effect when it confirmed Debtor's First Amended Chapter 13 Plan. Chandler took action that injuriously affected his former client in a matter in which he formerly represented that client when he argued in October 2014 that the CMITH lien was preserved, and that Chandler and the estate, rather than Debtor, should benefit from the invalidation of the CMITH lien. This was a clear violation of the duty of loyalty as defined by the California Supreme Court.

This court has discretion under both state law and bankruptcy law to deny some or all fees to an attorney who has breached ethical requirements. In re Wiredyne, 3 F.3d 1125, 1128 (7th Cir. 1993); In re McGregory, 340 B.R. 915, 922-23 (8th Cir. BAP 2006); In re Vann, 136 B.R. 863, 869-71 (D. Colo. 1992), aff'd 986 F.2d 1431 (10th Cir. 1993); In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 844 (Bankr. C.D. Cal. 1991); Clark v. Millsap, 197 Cal. 765, 785 (Cal. 1926); Cal Pak Delivery, Inc. v. United Parcel Service, Inc., 52 Cal. App. 4th 1, 14-16 (Cal. Ct. App. 1997). Cf. Matter of Ranchero Motor Inn, Inc., 527 F.2d 1044, 1047-48 (9th

Cir. 1995) (denial of fees to management company because of misconduct).

In exercising this discretion, I determine that Chandler's breach of ethical duty was so flagrant that he should be denied the fees he now seeks, and be required to refund all fees he has previously received. First, the breach of loyalty was stark. Chandler specifically argued that the CMITH lien was not preserved, obtained that result through the confirmed plan, then specifically argued that the lien was preserved. Second, Chandler made a blatant misrepresentation to this court. In arguing that the CMITH lien was preserved, he stated that it had been avoided under section 544 of the Bankruptcy Code (which would result in preservation of the lien). Docket No. 120, ¶¶ 7, 8. In fact, the adversary proceeding against CMITH, which Chandler drafted and filed, sought to invalidate the lien solely on the basis of Rule 3-300 of the California Rules of Professional Conduct (which resulted in the elimination of the lien). Docket No. 31, ¶¶ 13-16, 25-31. Third, Chandler's reversal of course was for the purpose of collecting his fees, and sought to deprive his former client of her homestead exemption – one of the most important protections provided debtors under both state and Federal law. Fourth, Chandler understood all of this. Although the question whether the CMITH lien was preserved may appear technical and confusing to an attorney who does not regularly practice bankruptcy law, Chandler specializes in bankruptcy law and understood the meaning of everything he did. Any doubt about that is dispelled when one sees the technical virtuosity with which he first argued that the lien was not preserved and then argued that it was preserved.

I determine that this remedy fully compensates Debtor for all harm caused by Chandler's breach of duty.  Requiring Chandler to refund the $15,593 he already received should be sufficient to cover the fees that Debtor incurred in responding to Chandler's fee application, Chandler's motion to distribute proceeds, and Chandler's opposition to Debtor's motion to dismiss her chapter 13 case.

**\*\*END OF MEMORANDUM DECISION\*\***