**Entered on Docket**
**November 04, 2015**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

NOV 03 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. NC-15-1029-JuTaD |
| | BAP No. NC-15-1036-JuTaD |
| DEBORAH MYNETTE MCINTOSH, | (cross appeals) |
| Debtor. | Bk. No. 13-11774 |
| DAVID N. CHANDLER, p.c., | |
| Appellant/ Cross Appellee, | |
| v. | **M E M O R A N D U M**[*] |
| DEBORAH MYNETTE MCINTOSH; Appellee/ Cross Appellant, | |
| CALHFA MORTGAGE ASSISTANCE PROGRAM,[**] | |
| Appellee. | |

Argued and Submitted on October 23, 2015
at San Francisco, California

Filed - November 3, 2015

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Thomas E. Carlson, Bankruptcy Judge, Presiding[***]

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**] Appellee CalHFA Mortgage Assistance Program (CalHFA) has not participated in this appeal.

[***] The post-confirmation proceedings that culminated in the orders on appeal were assigned to Judge Carlson by Judge
(continued...)

-1-

1 _____

2 Appearances:    David N. Chandler, Jr. argued for
                  appellant/cross-appellee David N. Chandler, p.c.;
3                 Paul Jamond argued for appellee/cross appellant
                  Deborah Mynette McIntosh.

4 _____

5 Before:  JURY, TAYLOR, and DUNN, Bankruptcy Judges.

6

7      The orders on appeal arise from a disagreement between

8 Deborah Mynette McIntosh (Debtor) and her former bankruptcy

9 attorney David N. Chandler, Jr. over his fees.  David N.

10 Chandler, p.c. (Chandler)[1] appeals from: (1) the order granting

11 Debtor's motion to dismiss her bankruptcy case (Dismissal

12 Order); (2) the order denying Chandler's motion for order

13 directing escrow company to pay net sales proceeds to the

14 chapter 13 trustee (Distribution Order); and (3) the order

15 denying Chandler's fee application and requiring him to disgorge

16 amounts that had been previously paid (Fee Order) (BAP No. 15-

17 1029).  Debtor cross appeals on the Fee Order, contending that

18 certain findings made by the bankruptcy court in its Memorandum

19 Decision preclude her from filing a legal malpractice claim

20 against Chandler in another court or seeking further damages due

21 to his continuing breach of the duty of loyalty (BAP

22

23 _____

      [***](...continued)
24 Jaroslovsky.

25      [1] Appellant David N. Chandler, p.c. consists of David N.
26 Chandler, Jr. and his father, David N. Chandler, Sr.  The
   bankruptcy court found that David N. Chandler, Jr. performed most
27 of the work for Debtor.  For simplicity, we refer to David N.
   Chandler, Jr. and David N. Chandler, p.c. as "Chandler"
28 throughout this memorandum.

-2-

No. 15-1036).  For the reasons set forth below, we AFFIRM the three orders on appeal.

## I.  FACTS[2]

Debtor owned real property in Rutherford, California.  The property was encumbered by a first deed of trust in favor of Bayview Loan Servicing, a second deed of trust in favor of PNC Bank, and a fourth deed of trust in favor of CalFHA.  Debtor owed $450,000 in attorneys' fees to Carr, McClellan, Ingersol, Thompson & Horn (CMITH) for contesting a will on her behalf.  Of this amount, $230,000 was secured by a third priority deed of trust on the property.  CMITH sued Debtor in the California Superior Court, seeking to foreclose on its security interest and obtain a money judgment for the outstanding fees and costs. After she was served with CMITH's complaint, Debtor hired Chandler to file a chapter 13[3] bankruptcy case for her and to represent her in that case.

On September 18, 2013, Chandler filed Debtor's petition. Chandler later filed a Rule 2016(b) Statement disclosing that he had received $3,500 from Debtor and that $3,000 was still owed. The statement showed that Chandler's services included an analysis of Debtor's financial situation, preparation and filing

---

[2] We borrow from the bankruptcy court's recitation of the facts in its Memorandum Decision.

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, "Civil Rule" references are to the Federal Rules of Civil Procedure, and "Cal. RPC" references are to the California Rules of Professional Conduct.

-3-

1  of the petition, schedules, and other documents, and

2  representation of Debtor at the meeting of creditors.[4]

3      To deal with the CMITH deed of trust, Chandler took a

4  number of steps.  Chandler filed Debtor's initial plan which

5  provided for the sale of her residence free and clear of CMITH's

6  lien and stated that she "shall commence proceedings" against

7  CMITH to enforce her homestead exemption.  The plan also said

8  that if Debtor prevailed in the proceeding, after payment of the

9  lien of CalHFA, Debtor "shall be entitled to funds representing

10  her allowed homestead."

11      Chandler then filed an adversary complaint against CMITH on

12  Debtor's behalf, seeking declaratory and injunctive relief.

13  The complaint alleged that the deed of trust was procured in

14  violation of Cal. RPC 3-300 because CMITH had not advised Debtor

15  to seek advice from separate counsel before engaging in the

16  transaction with her attorneys.[5]  The complaint did not mention

17  _____

18  [4] The disclosure talks about a fixed fee, and there is no
   disclosure of any fee agreement for billing at an hourly rate for
19  services beyond those listed.

20  [5] Cal. RPC 3-300, entitled "Avoiding Interests Adverse to a
   Client," provides:
21

22  A member shall not enter into a business transaction
   with a client; or knowingly acquire an ownership,
23  possessory, security, or other pecuniary interest
   adverse to a client, unless each of the following
24  requirements has been satisfied:

25  (A) The transaction or acquisition and its terms are
26  fair and reasonable to the client and are fully
   disclosed and transmitted in writing to the client in a
27  manner which should reasonably have been understood by
   the client; and
28                                  (continued...)

or seek relief under any Bankruptcy Code provision. In seeking
the injunction, the complaint alleged that Debtor would suffer
irreparable harm because CMITH's foreclosure would deprive her
of her homestead exemption.

Chandler filed a motion for summary judgment (MSJ) in the
adversary proceeding which was scheduled for hearing on
February 7, 2014. The MSJ mentioned only Cal. RPC 3-300.

In Schedule C, Debtor claimed a homestead exemption in her
property. The exemption was deemed allowed because no party
filed a timely objection.

Chandler also filed a motion to sell Debtor's residence
free and clear of CMITH's lien, alleging that the validity of
the lien was in bona fide dispute. In describing the dispute,
the motion cited only Cal. RPC 3-300.

On December 11, 2013, the bankruptcy court held a
preliminary hearing on the confirmation of Debtor's chapter 13
plan.[6] Judge Jaroslovsky asked Chandler whether the CMITH lien

---

[5](...continued)
(B) The client is advised in writing that the client
may seek the advice of an independent lawyer of the
client's choice and is given a reasonable opportunity
to seek that advice; and

(C) The client thereafter consents in writing to the
terms of the transaction or the terms of the
acquisition.

[6] On April 16, 2015, Chandler filed a motion to augment the
record on appeal to include the transcript of the initial plan
confirmation hearing heard by the bankruptcy court on
December 11, 2013. As the transcript is material to Chandler's
arguments on appeal, we grant the motion.

-5-

would be preserved for the benefit of the estate under § 551[7]
if it were invalidated.  In response, Chandler argued that the
lien was not being avoided under the Bankruptcy Code and thus
would not be preserved for the benefit of the estate.

> We're not avoiding [the CMITH deed of trust] under a
> rule that would require preservation for the benefit
> of the estate.  It's a void [sic] for clear violation
> of rule 3300. . . .

Chandler also argued that the transfer was not truly voluntary
so that Debtor could exempt the value created by setting aside
the CMITH deed of trust.

> Well, the idea is this: by virtue—3300 has to do with
> informed consent.  When you make a voluntary transfer
> and you then avoid it, it would typically be for the
> benefit of the estate.  But when you have a failure
> under 3300 then you don't have a consensual transfer
> because it wasn't voluntary by definition, you are not
> voiding it under the Bankruptcy Code, you are voiding
> it under the [California] Rules of Professional
> Conduct.

On January 21, 2014, Judge Jaroslovsky approved the sale of
Debtor's residence free and clear of liens.  The approved sale
price was $750,000.  Taxes and two deeds of trust senior to the
CMITH deed of trust would be paid upon closing and the remaining
sale proceeds would be held in escrow pending resolution of the
dispute regarding the CMITH deed of trust and "further order of
the Court."

Three days later, on January 24, 2014, and prior to the

---

[7] Section 551 provides:

Any transfer avoided under section 522, 544, 545, 547,
548, 549, or 724(a) of this title, or any lien void
under section 506(d) of this title, is preserved for
the benefit of the estate but only with respect to
property of the estate.

-6-

1  scheduled MSJ hearing on February 7, 2014, CMITH unilaterally
2  recorded a deed of reconveyance with the Napa County Recorder's
3  office and formally released its deed of trust as a lien against
4  Debtor's property.  Upon the reconveyance, the sale provision to
5  sell free and clear of its lien was effectively mooted.

6      CMITH had filed a proof of claim in Debtor's bankruptcy
7  case and Debtor had potential additional claims against CMITH.
8  In early February 2014, Debtor reached a settlement with CMITH.
9  Under that settlement, CMITH agreed to withdraw its proof of
10 claim, Debtor agreed to release any further claims she might
11 have against CMITH, including claims for attorneys' fees that
12 she incurred in pursuing the adversary proceeding, and CMITH
13 agreed to pay $10,000.  Chandler's declaration accompanying the
14 motion to approve the compromise stated that the terms of the
15 settlement included, among other things, that "Carr McClellan
16 will pay directly to the Debtor's Counsel the sum of $10,000[]
17 in full satisfaction of any claims for costs or attorneys fees
18 by either Debtor's Counsel or Debtor arising out of the
19 Adversary Proceeding."

20     Judge Jaroslovsky approved the settlement by an order
21 entered on February 10, 2014.  The order states that the terms
22 of the settlement as set forth in ¶ 4 of Chandler's declaration,
23 including the payment of $10,000, were approved.  As of that
24 date, there was no written settlement.  Later, the parties
25 negotiated and executed an Agreement and Mutual General Release
26 and filed a motion for an amended order authorizing the
27 compromise.  With respect to the settlement payment, the
28 agreement stated:

-7-

1   Settlement Payment.   Attorneys shall within two
    business days of the Effective Date of this Agreement
2   as defined below pay to David N. Chandler, [p.c.] the
    sum of $10,000.00 in full satisfaction of any and all
3   known or unknown monetary claims by Former Clients
    against Attorneys,[8] including without limitation
4   claims for attorneys' fees and costs Client Mcintosh
    may assert arising out of the Mcintosh Adversary
5   Proceeding.

6        The bankruptcy court entered the amended order on March 31,

7   2014.  At that time, Chandler had not submitted a fee

8   application in connection with fees incurred in litigating the

9   adversary proceeding.  See § 330(a)(4)(B).  On April 11, 2014,

10  Chandler filed a Disclosure of Compensation of Attorney pursuant

11  to Rule 2016(b), stating that he had retained the $10,000 for

12  payment of fees owed to him by Debtor in connection with the

13  adversary proceeding.

14       On February 12, 2014, Chandler filed a First Amended

15  Chapter 13 Plan.  Revised § 6.01 of the Amended Plan provided:

16       a. Real Property located at . . . Grape Lane,
         Rutherford, California 94573 shall be sold as soon as
17       practicable pursuant to the Order Authorizing Sale of
         Real Property.  Docket No. 71.  Closing costs and the
18       secured claims of Bayview Loan Servicing, PNC Bank,
         CalHFA Mortgage Assistance Corp. and any amount due
19       the Napa County Tax Collector shall be paid by the
         Debtor directly from escrow with proceeds from the
20       sale.  **The Debtor shall receive net proceeds from the
         sale on account of her homestead exemption.**  Should
21       there be any non-exempt net sale proceeds, the same
         shall be payable to the Ch. 13 Trustee for
22       distribution in accordance with the Code.  (Emphasis
         added).
23

24       The sale of Debtor's property closed on March 10, 2014.

25  After the two senior lenders were paid, the amount of $57,712

26  _____

27       [8] A reasonable interpretation of this provision is that the
    $10,000 amount was the total amount of fees Chandler would seek
28  for work done in the adversary proceeding.

-8-

1  remained in escrow subject to the $21,000 secured claim of

2  CalHFA and Debtor's homestead exemption.

3      The amended plan was unopposed when it came before the

4  court for approval.  On April 3, 2014, the bankruptcy court

5  entered the order approving the amended plan.  No appeal was

6  filed.

7      After the amended plan was approved, Debtor asked Chandler

8  numerous times to arrange to have the funds held in escrow by

9  the title company released to both her and CalHFA.  Chandler did

10 not comply, finally telling Debtor in an August 14, 2014 email:

11         . . . it is not totally clear that any of the money
           in escrow is yours.  We certainly discussed the
12         possibility of it being yours and you may continue to
           insist that it is, but the decision is neither yours
13         nor mine.  The decision rests with the Court and the
           issues are complicated. . . .

14

15      A disagreement arose between Debtor and Chandler regarding

16 his fees.  Debtor allegedly was never informed about the amount

17 of fees claimed by Chandler and did not know that Chandler

18 wanted some of the money held in escrow for his fees.

19      Prior to the dispute, Chandler had received a pre-petition

20 retainer of $3,500 and the $10,000 settlement amount paid by

21 CMITH.  The confirmed plan approved additional fees in the

22 amount of $3,000 to be paid at the rate of $273 per month for

23 60 months.  Chandler received $2,093 through these plan

24 payments.  Combined, Chandler received the sum of $15,593.

25      On August 19, 2014, Debtor discharged Chandler and

26 substituted Paul M. Jamond as her counsel.  On the same day,

27 Debtor filed a motion to dismiss her chapter 13 case.

28 Chandler opposed the dismissal arguing that Debtor's request for

1   dismissal was not in good faith since she was attempting to

2   obtain the proceeds from the sale of her property for herself to

3   the detriment of the estate.

4        Chandler also filed his final fee application seeking

5   $88,816 in fees and $3,384.82 in costs ($92,200.82) for work

6   done in the bankruptcy case and the adversary proceeding.  After

7   application of the prepetition retainer, amounts paid through

8   the chapter 13 plan, and the $10,000 received through the

9   settlement with CMITH, Chandler sought payment of the remaining

10  balance of $75,670.82.  Chandler's time records show that

11  approximately $19,620 in fees and $1,598.59 in costs were

12  incurred for services relating to the adversary proceeding.

13  After deducting the $10,000 settlement payment from CMITH,

14  Chandler showed $11,218.59 due in connection with the adversary

15  proceeding with the balance of the requested fees for services

16  performed in the bankruptcy case.

17       On September 5, 2014, Chandler filed the Motion for Order

18  Directing Escrow Company to Pay Net Sales Proceeds to Chapter 13

19  Trustee (Distribution Motion).  In the motion, Chandler states:

20       The [CMITH] deed of trust was avoided under the
         authority of section 544 of the [Bankruptcy] Code.
21       11 U.S.C. 544.  The avoided [CMITH] Deed of Trust was
         automatically preserved for the benefit of the
22       Bankruptcy Estate.  11 U.S.C. 551.

23       In his accompanying declaration, Chandler states:

24       I argued that, upon avoidance of the [CMITH] Deed of
         Trust, the subordinate CalHFA Deed of Trust would
25       improve its position and the Debtor would have an
         exemption in the remaining equity.
26
         Following confirmation and after conducting legal
27       research in the months of June and July 2014, I
         reached the conclusion that the Court was correct and
28       that preservation of the avoided [CMITH] lien for the

                                -10-

> estate occurred automatically.  However, in so
> concluding, I was mindful that my office's interest in
> the case had become adverse to that of the Debtor on
> the issue of disposition of sale proceeds.
>
> . . .
>
> I tried to explain [to Debtor's new counsel] the
> complexity of the situation and the legal issues
> involved, including § 522(g) and § 551.

On September 15, 2014, Debtor opposed Chandler's fee application on the grounds that he had breached his duty of loyalty to her by switching his position on the preservation of CMITH's lien — arguing no preservation when he represented her and then arguing for preservation after the fee dispute arose. Due to this ethical violation, Debtor requested the bankruptcy court to deny him all fees and order the disgorgement of fees previously received.  Chandler replied, stating that: (1) his Distribution Motion which required the net sales proceeds to be paid to the chapter 13 trustee was fully "consistent with the Plan and implements its terms;" (2) Debtor avoided the CMITH lien under §§ 544(a)(1) and (b)(1); and (3) the avoided CMITH lien was preserved for the bankruptcy estate and not Debtor under § 551.

> The inability of a debtor to exempt voluntarily
> transferred property that is recovered under Section
> 551 is, likewise, a strictly legal issue, and the
> result that the estate benefit from avoidance of a
> voluntary transfer is mandated by law.  11 U.S.C.
> Section 522(g); see also Russel v. Kuhnel
> (In re Kuhnel) (10th Cir. 2007) 495 F.3d 1177.

Chandler further argued:

> Because David N. Chandler, p.c. only took action to
> obtain approval of disputed fees and address funds
> held in escrow after the Debtor terminated the
> attorney-client relationship and subsequently retained
> substitute counsel, the common law duty of loyalty was

1   not infringed upon as a matter of law because there
2   was no compromised representation.  <u>Santa Clara County</u>
    <u>Counsel Attnys. Assn. vs. Woodside</u>, supra, 7 Cal.4th
3   at 549-54.  The concept is consistent with the
    principle that an attorney must withdraw from
    representation before suing a client for disputed
4   fees.  <u>Id.</u> at 548-49, citing <u>Los Angeles County Bar</u>
    <u>Ethics Opns., opn. No. 212 (1953)</u>.  The common law
5   duty of loyalty did not require David N. Chandler,
    p.c. to abnegate its rights and duties in favor of
6   advancing the wishes of its client, particularly when
    the client's wishes were contrary to the law.

7

8        In a separate reply in response to Debtor's opposition to

9   the Distribution Motion, Chandler also asserted that the motion

10  was "consistent with the chapter 13 Plan and implements its

11  terms" and that:

12       Section 522(g) of the Code which prohibits a debtor
         from claiming property recovered by the estate under
13       Section 551 as exempt if the recovered property was
         voluntarily transferred by the debtor.  11 U.S.C.
14       § 522(g); <u>see also</u> <u>Russel v. Kuhnel (In re Kuhnel)</u>
         (10th Cir. 2007) 495 F.3d 1177.
15

16       On October 21, 2014, the bankruptcy court heard Debtor's

17  motion to dismiss, the Distribution Motion, and Chandler's fee

18  application and took the matters under submission.

19       On January 16, 2015, the bankruptcy court issued a

20  Memorandum Decision.  In discussing the Distribution Motion, the

21  court noted that the CMITH lien was not preserved for the

22  benefit of the estate under any of the relevant sections of the

23  Bankruptcy Code because the adversary proceeding under which the

24  CMITH deed of trust was invalidated was brought solely under

25  Cal. RPC 3-300 and did not seek to avoid the lien under any of

26  the Bankruptcy Code sections listed in § 551.  The court also

27  found that the confirmed chapter 13 plan provided that the CMITH

28  deed of trust was not preserved for the benefit of the estate.

1  In the end, the court denied the Distribution Motion and ordered

2  the escrow agent to distribute the $57,713 in sale proceeds,

3  with $21,000 to CalFHA and the remainder to Debtor on account of

4  her homestead exemption.

5       In ruling on Chandler's final fee application, the

6  bankruptcy court found that Chandler had "blatantly" breached

7  his duty of loyalty to Debtor and that he should be denied all

8  fees as a result of his misconduct.

9        At the outset, it is important to note that Chandler's
        breach of loyalty is not in his attempt to collect
10       fees from Debtor.  An attorney must always be free to
        pursue his client for fees if he or she does so
11       properly.  Chandler's breach of duty arises from the
        fact that he is taking a position adverse to his
12       former client on an issue on which he previously
        represented the client and that is separate from the
13       fees he is seeking to collect.  With respect to that
        separate issue, it does not matter whether the court
14       has decided the issue, or whether the position
        Chandler is currently taking is legally correct.  An
15       attorney who advocates a position on behalf of a
        client cannot switch sides simply because the issue
16       has not yet been decided and/or he now believes the
        position he previously asserted on behalf of the
17       client is wrong.

18       The bankruptcy court noted that it had discretion under

19  both state law and bankruptcy law to deny some or all fees to an

20  attorney who has breached ethical requirements.  The court

21  determined that Chandler's breach of ethical duty was "so

22  flagrant" that he should be denied all fees and required to

23  refund fees he previously received.

24       First, the breach of loyalty was stark.  Chandler
        specifically argued that the CMITH lien was not
25       preserved, obtained that result through the confirmed
        plan, then specifically argued that the lien was
26       preserved.  Second, Chandler made a blatant
        misrepresentation to this court.  In arguing that the
27       CMITH lien was preserved, he stated that it had been
        avoided under section 544 of the Bankruptcy Code
28       (which would result in preservation of the lien).

-13-

Docket No. 120, ¶¶ 7, 8.  In fact, the adversary proceeding against CMITH, which Chandler drafted and filed, sought to invalidate the lien solely on the basis of Rule 3-300 of the California Rules of Professional Conduct (which resulted in the elimination of the lien).  Docket No. 31, ¶¶ 13-16, 25-31.  Third, Chandler's reversal of course was for the purpose of collecting his fees, and sought to deprive his former client of her homestead exemption—one of the most important protections provided debtors under both state and Federal law. Fourth, Chandler understood all of this.  Although the question whether the CMITH lien was preserved may appear technical and confusing to an attorney who does not regularly practice bankruptcy law, Chandler specializes in bankruptcy law and understood the meaning of everything he did.  Any doubt about that is dispelled when one sees the technical virtuosity with which he first argued that the lien was not preserved and then argued that it was preserved.

On the same day, the bankruptcy court entered the Dismissal Order, Distribution Order and Fee Order.  Chandler filed a timely appeal from those orders and Debtor filed a timely cross appeal on the Fee Order.

## II.  JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (L).  We have jurisdiction under 28 U.S.C. § 158.

## III.  ISSUES

**ISSUES ON APPEAL:**

Did the bankruptcy court err in finding that Chandler had breached the duty of loyalty?

Did the bankruptcy court abuse its discretion by denying Chandler's fee application in its entirety and requiring disgorgement of fees previously paid?

Did the bankruptcy court err in denying Chandler's Distribution Motion?

-14-

1   Did the bankruptcy court err in granting Debtor's motion to
2   dismiss her case?

3   **ISSUES ON CROSS APPEAL**

4   Does the bankruptcy court's statement that its denial of
5   Chandler's fees "fully compensated" Debtor for breach of
6   Chandler's duty of loyalty preclude her from pursuing a
7   malpractice action against him or seeking further fees?

8   Did the bankruptcy court deny Debtor procedural due process
9   when it found that its denial of Chandler's fees "fully
10  compensated" her for Chandler's breach of the duty of loyalty?

11                    **IV.   STANDARDS OF REVIEW**

12  We review the bankruptcy court's findings of fact for clear
13  error and its conclusions of law de novo. <u>Cont'l Ins. Co. v.</u>
14  <u>Thorpe Insulation Co. (In re Thorpe Insulation Co.)</u>, 671 F.3d
15  1011, 1030 (9th Cir. 2011).

16  We review the bankruptcy court's denial of attorneys' fees
17  for abuse of discretion. <u>Rodriguez v. Disner</u>, 688 F.3d 645, 652
18  (9th Cir. 2012); <u>First Interstate Bank of Nev., N.A. v. CIC Inv.</u>
19  <u>Corp. (In re CIC Inv. Corp.)</u>, 192 B.R. 549, 551 (9th Cir. BAP
20  1996). "We generally give broad deference to the [bankruptcy]
21  court's determinations on fee awards because of its 'superior
22  understanding of the litigation and the desirability of avoiding
23  frequent appellate review of what essentially are factual
24  matters.'" <u>Rodriguez</u>, 688 F.3d at 652.

25  We also review an order dismissing a chapter 13 bankruptcy
26  case for abuse of discretion.  <u>Brown v. Sobczak (In re Sobczak)</u>,
27  369 B.R. 512, 516 (9th Cir. BAP 2007).

28  Under the abuse of discretion standard, we must affirm

-15-

1  unless the bankruptcy court applied the wrong legal standard or
2  its findings of fact were illogical, implausible, or without
3  support in the record.  United States v. Hinkson, 585 F.3d 1247,
4  1262 (9th Cir. 2009) (en banc).

5      We may affirm on any ground supported by the record.
6  Vestar Dev. II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 960
7  (9th Cir. 2001).

8                          **V.  DISCUSSION**

9      Chandler identifies seven issues on appeal in his opening
10 brief.  Each of his claims pertains to the bankruptcy court's
11 errors in finding that he breached the duty of loyalty.  In
12 Chandler's view, the bankruptcy court did not apply the correct
13 legal standards in making its determination and the evidence
14 simply did not add up to a breach of the duty of loyalty.  "For
15 one reason or another, the Bankruptcy Court simply got it
16 wrong."  As discussed below, we are not persuaded by any of his
17 arguments.

18 **A.  The bankruptcy court did not err in concluding that**
   **Chandler had breached the duty of loyalty to Debtor.**
19
       **1.  Legal Standards**
20

21     "The federal courts in California do not have their own
22 rules of professional conduct for lawyers."  In re Muscle
23 Improvement, Inc., 437 B.R. 389, 393 (Bankr. C.D. Cal. 2010).
24 Northern California Bankruptcy Court Local Rule 1001-2(a)
25 incorporates the Northern District Court Civil Local
26 Rule 11-4(a)(1), which in turn provides that all attorneys must
27 "comply with the standards of professional conduct required of
28 members of the State Bar of California."  Cal. RPC 1-100

                              -16-

provides that "the prohibition of certain conduct in these rules is not exclusive.  Members are also bound by applicable law including . . . opinions of California courts."  In addition to the California Rules of Professional Conduct, an attorney's duty of loyalty has been recognized in the common law.

The California Supreme Court explained the duty of loyalty over eight decades ago:

> One of the principal obligations which bind[s] an attorney is that of fidelity, the maintaining inviolate the confidence reposed in him by those who employ him, and at every peril to himself to preserve the secrets of his client.  This obligation is a very high and stringent one.  It is also an attorney's duty to protect his client in every possible way, and it is a violation of that duty to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances.  By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests.  Nor does it matter that the intention and motives of the attorney are honest.  The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent.

Anderson v. Eaton, 211 Cal. 113, 116 (1930).

The duty of loyalty does not stop once the attorney-client relationship ends.  Oasis W. Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011).  An attorney "may not do anything which will injuriously affect [the] former client in any matter in which [the attorney] formerly represented him."  Id.; see also Wutchumna Water Co. v. Bailey, 216 Cal. 564, 573-74 (1932).  This is so even if the action injurious to the former client

-17-

1  does not involve the use or disclosure of confidential

2  information.  People ex rel. Deukmajian v. Brown, 29 Cal.3d 150,

3  156 (1981).  An attorney breaches the duty of loyalty in taking

4  action on his or her own behalf, if that action is injurious to

5  a former client on a matter in which the attorney represented

6  that client.  Oasis, 51 Cal.4th at 822-24.  Applying these

7  standards, we consider whether the bankruptcy court's conclusion

8  that Chandler breached his duty of loyalty to Debtor was

9  correct.

10     **2.  Analysis**

11     Although Chandler acknowledges the long standing rule that

12  an attorney "may not do anything which will injuriously affect

13  [the] former client in any matter in which [the attorney]

14  formerly represented him," he insists the rule does not apply

15  under these circumstances.  Chandler argues that since he

16  withdrew from representation as soon as the conflict arose, the

17  common law duty of loyalty was not infringed upon as a matter of

18  law because there was no compromised representation.  Chandler

19  cites Santa Clara County Counsel Attorneys Association v.

20  Woodside, 7 Cal.4th 525, 549-54 (1994), in support of this

21  argument.  Relying again on Woodside, he argues that the "never

22  injuriously affect the former client" prohibition set forth in

23  Oasis is qualified by a client's "legitimate expectations" of

24  the attorney's conduct and courts will not protect a client's

25  illegitimate or unreasonable expectations of loyalty.  In this

26  regard, Chandler maintains that the bankruptcy court erred by

27  not considering whether Debtor had a legitimate expectation that

28  he would sit silently by the side lines and ignore the effect of

-18-

§§ 544 and 551 while she was trying to dismiss her case, obtain the proceeds from the sale of her property for herself with no judicial oversight, and evade paying him for beneficial services rendered.  Chandler is wrong on both accounts.

The Woodside case is distinguishable and does not stand for the propositions Chandler asserts.  There, the California Supreme Court held that attorneys employed by the County Counsel's office could maintain a suit against the County to enforce their statutory rights in a salary dispute without violating a duty of loyalty to their public agency employer. The court reasoned that the lawsuit did not represent a conflict with the County on matters in which the attorneys had represented or were representing the County.  In contrast, the bankruptcy court here explicitly found that Chandler's position in the Distribution Motion where he argued for the preservation of CMITH's lien directly conflicted with his position on that issue when he was representing Debtor.

The Woodside case also does not purport to place a "legitimate expectation" qualification, or any qualification, on the rule that it is an attorney's duty to protect his client in every possible way, and that it is a violation of that duty to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances.

In addition, as noted above, the duty of loyalty does not stop once the attorney-client relationship ends.  Oasis, 51 Cal.4th at 821.  Therefore, Chandler's actions after Debtor secured new counsel can be considered when determining whether

Case: 13-11774  Doc# 166  Filed: 11/03/15  Entered: 11/04/15 13:07:10  Page 19 of 31

1 Chandler violated the duty of loyalty. The bankruptcy court
2 recognized and correctly applied this rule.

3 Next, as Chandler sees it, he never took an adverse
4 position to Debtor because at "no point and in no pleading or
5 document filed with the court, did [he] contest or refute []
6 Debtor's claim to an exemption either under § 522(a) or (g)."
7 Chandler maintains there is no evidence in the record showing
8 otherwise. Thus, argues Chandler, no duty of loyalty was
9 breached. We cannot agree.

10 First, Chandler's making this argument on appeal is
11 disingenuous. In his reply to Debtor's opposition to his fee
12 application, he argued for the bankruptcy estate and not for
13 Debtor. This argument was a clear contest to Debtor's right to
14 her homestead exemption.

15 Second, the bankruptcy court's conclusion that Chandler
16 breached his duty of loyalty to Debtor has nothing to do with
17 whether he explicitly and specifically contested or refuted
18 Debtor's homestead exemption claim. Rather, the record shows
19 that after the fee dispute arose, Chandler changed his position
20 on whether CMITH's lien was preserved for the benefit of the
21 estate. While representing Debtor, Chandler argued that the
22 CMITH lien was not preserved for the estate and that the equity
23 created by removing the lien would be used to preserve Debtor's
24 homestead. The bankruptcy court entered an order to that effect
25 when it approved Debtor's first amended chapter 13 plan. Later
26 on, if CMITH's lien was preserved under § 551 for the benefit of
27 the estate as Chandler argued in the Distribution Motion, Debtor
28 potentially would not receive any sale proceeds on account of

1   her homestead exemption and Chandler would receive at least some
2   of his fees.  On this record, a reasonable trier of fact could
3   find that Chandler's change of position and personal interest in
4   having his fees paid before any sales proceeds were distributed
5   according to the terms of the approved plan had an injurious
6   affect on Debtor's homestead exemption and resulted in a breach
7   of the duty of loyalty.

8        Chandler also argues at length in his opening and reply
9   briefs why his position in the Distribution Motion regarding the
10  preservation of CMITH's lien under § 551 was correct.  The point
11  of these arguments is to show that he did not breach the duty of
12  loyalty since he was simply following the law.  Chandler's
13  emphasis on the correctness of his position is misplaced.  The
14  duty of loyalty was implicated when Chandler changed his
15  position on the lien preservation issue to protect his own
16  economic interests and not because his first position was
17  "wrong" and the second one "right."  We note that Chandler did
18  not arrive at the "right" conclusion until his fees were in
19  jeopardy.

20       Chandler also contends that the bankruptcy court abused its
21  discretion in denying his fee application because its conclusion
22  was based on erroneous findings of fact.  The arguments Chandler
23  makes again relate to the bankruptcy court's conclusion that he
24  breached the duty of loyalty.  Chandler argues that the court's
25  finding that he made a "blatant misrepresentation" was error
26  because his statement regarding the reconveyance of the CMITH
27  deed of trust being "avoided under the authority of § 544" was a
28  legal position, not a statement of fact.  Chandler insists,

-21-

1  again, that this was a correct statement of the law.  Chandler

2  also argues that the bankruptcy court misinterpreted the

3  confirmed chapter 13 plan because the plan did not determine

4  Debtor's exemption nor did it contain language that entitled

5  CalHFA to sales proceeds.

6       On the record before us, there is no basis to question the

7  bankruptcy court's factual findings, much less find them clearly

8  erroneous.  We do not second guess the bankruptcy court's

9  characterization of Chandler's statement regarding CMITH's lien

10  as being avoided under § 544 as a "blatant misrepresentation"

11  considering the context in which it was made.  Moreover, even if

12  Chandler's statement could be construed as a legal position,

13  the facts underlying the position were not true — the adversary

14  proceeding Chandler filed against CMITH did not allege facts

15  where § 544 might apply and did not mention any Bankruptcy Code

16  section at all.  Chandler's statement, whether construed as an

17  argument or fact, was false.

18       We also give substantial deference to the bankruptcy

19  court's interpretation of Debtor's first amended chapter 13

20  plan.  See In re Marciano, 459 B.R. 27, 35 (9th Cir. BAP 2011)

21  ("We owe substantial deference to the bankruptcy court's

22  interpretation of its own orders and will not overturn that

23  interpretation unless we are convinced that it amounts to an

24  abuse of discretion."), aff'd, 708 F.3d 1123 (9th Cir. 2013).

25  We are not convinced by Chandler's contention that certain

26  issues regarding Debtor's homestead exemption and payment to

27  CalFHA were "preserved" through the following language in

28  Debtor's plan:  "No lien on real property shall be removed,

-22-

1  avoided or extinguished except by adversary proceeding pursuant

2  to Rule 7001(2). . . . ."  To put it lightly, Chandler's

3  interpretation depends upon a strained and improbable reading.

4      Due to Chandler's actions and change in position, we find

5  that the bankruptcy court did not err when it concluded that

6  Chandler had breached his duty of loyalty.  The court set forth

7  the correct legal standards for evaluating Chandler's ethical

8  duty of loyalty and applied properly the law to the facts of the

9  case.  Moreover, its factual findings were plausible and

10  supported by inferences that may be drawn from the facts in the

11  record.  Having found that Chandler breached his duty of

12  loyalty, the bankruptcy court had discretion over whether to

13  permit Chandler to receive any fees.

14  **B.   The bankruptcy court did not abuse its discretion in
         concluding that Chandler was not entitled to any fees**

15  **as a result of his ethical violation and disgorgement was
         proper.**

16

17      Chandler contends that the bankruptcy court abused its

18  discretion in denying all his fees and ordering disgorgement.

19  According to Chandler, compensation can only be disallowed after

20  breach of the duty of loyalty, citing <u>Jeffry v. Pounds</u>,

21  67 Cal.App.3d 6, 11-12 (1977).  Chandler also complains that the

22  bankruptcy court did not consider the standards under § 330

23  regarding the reasonableness of his fees, the value of his

24  services, and its own observation of the quality of his

25  services.

26      At the October 21, 2014 hearing, the bankruptcy court

27  acknowledged the rule in <u>Jeffry</u> that an attorney cannot collect

28  fees during the period in which he/she was breaching the duty of

-23-

1    loyalty.  However, the bankruptcy court properly noted that

2    under California law it had discretion to deny some or all of

3    the fees of an attorney who has breached ethical requirements.

4    See Pringle v. La Chapelle, 73 Cal.App. 4th 1000, 1006 (1999);

5    Cal Pak Delivery, Inc. v. United Parcel Serv., Inc., 52 Cal.App.

6    4th 1, 14-16 (1997); Jeffry, 67 Cal.App.3d at 11-12.  The

7    "egregiousness of the violation is often the critical factor."

8    Rodriguez, 688 F.3d at 655 (referring to California law).

9        The bankruptcy court also correctly observed that under

10   Ninth Circuit law, it had discretion to deny fees to an attorney

11   who commits an ethical violation.  Id.  "In making such a

12   ruling, the [bankruptcy] court may consider the extent of the

13   misconduct, including its gravity, timing, willfulness, and

14   effect on the various services performed by the lawyer, and

15   other threatened or actual harm to the client."  Id.  In

16   Rodriguez, the Ninth Circuit noted that "[t]he representation of

17   clients with conflicting interests and without informed consent

18   is a particularly egregious ethical violation that may be a

19   proper basis for the complete denial of fees."  Id.

20       Applying these authorities, the bankruptcy court found that

21   Chandler's breach of the duty of loyalty was so "flagrant" that

22   he should be denied all fees and refund fees previously

23   received.  The court then made additional findings of fact to

24   support its decision - findings which establish that Chandler's

25   breach of his ethical duty of loyalty was the equivalent of

26   "egregious:"  (1) the breach of loyalty was "stark;"

27   (2) Chandler made a blatant misrepresentation to the court;

28   (3) Chandler's reversal of course was for the purpose of

1  collecting his fees, and sought to deprive his former client of

2  her homestead exemption; and (4) Chandler understood all this -

3  he "understood the meaning of everything he did."  These

4  findings are plausible and supported by inferences that may be

5  drawn from the facts in the record.  Thus, they cannot be

6  clearly erroneous.

7      Section 330 does not compel a different result.  A

8  bankruptcy court's authority to deny fees and order disgorgement

9  is "grounded in [its] inherent authority over the debtor's

10 attorney's compensation."  Law Offices of Nicholas A. Franke v.

11 Tiffany (In re Lewis), 113 F.3d 1040, 1045 (9th Cir. 1997).  In

12 a chapter 13 case, a bankruptcy court "may allow reasonable

13 compensation to the debtor's attorney for representing the

14 interests of the debtor in connection with the bankruptcy case

15 based on a consideration of the benefit and necessity of such

16 services to the debtor and the other factors set forth in this

17 section."  § 330(a)(4)(B).  The allowance of reasonable

18 compensation is discretionary.  In re CIC Inv. Corp., 192 B.R.

19 at 551.

20      Ethical violations are relevant to a fee determination

21 under § 330.  See Matter of Ranchero Motor Inn, Inc., 527 F.2d

22 1044, 1047 (9th Cir. 1975) ("Improper conduct on the part of

23 officers or attorneys has frequently been penalized by

24 withholding compensation or reimbursement or both.");

25 In re Wilde Horse Enters., Inc., 136 B.R. 830, 844 (Bankr. C.D.

26 Cal. 1991) ("[V]iolations of . . . professional ethics or

27 breaches of fiduciary duties can give rise to the reduction,

28 denial or forfeiture of compensation or other sanctions.").

-25-

1  Here, the bankruptcy court's discretionary decision to deny all

2  fees and order disgorgement was based on its factual findings

3  regarding the gravity of Chandler's ethical violations. Thus,

4  there was no need for the court to inquire into the

5  reasonableness of his fees or consider other factors under

6  § 330(a)(3).[9]

7       Finally, Chandler makes no specific argument regarding the

8  bankruptcy court's authority to require disgorgement of the

9  $10,000 payment made to him by CMITH under the court-approved

10  compromise order. Although the compromise order was a final

11  order as between Debtor and CMITH, there is no indication in the

12  order or in the record on appeal that the compromise order was

---

14  [9] Section 330(a)(3) states:

16  In determining the amount of reasonable compensation to
    be awarded to an examiner, trustee under chapter 11, or
    professional person, the court shall consider the
17  nature, the extent, and the value of such services,
    taking into account all relevant factors, including--

19  (A) the time spent on such services;
20  (B) the rates charged for such services;
    (C) whether the services were necessary to the
    administration of, or beneficial at the time at which
21  the service was rendered toward the completion of, a
    case under this title;
22  (D) whether the services were performed within a
23  reasonable amount of time commensurate with the
    complexity, importance, and nature of the problem,
24  issue, or task addressed;
25  (E) with respect to a professional person, whether the
    person is board certified or otherwise has demonstrated
26  skill and experience in the bankruptcy field; and
    (F) whether the compensation is reasonable based on the
27  customary compensation charged by comparably skilled
    practitioners in cases other than cases under this
28  title.

final as between Debtor and Chandler with respect to his fees.
Actually, the record suggests that it was not.  First, Chandler
incurred fees beyond the $10,000 in the adversary proceeding.
Next, Chandler continued to represent Debtor in the underlying
bankruptcy case.  Thus, he could not have submitted a "final"
fee application at the time of the compromise order.  Last, by
filing his final fee application and seeking court approval for
amounts previously paid — including the $10,000 — Chandler could
not be relying on the compromise order as a final fee award with
respect to that payment.  By treating the $10,000 payment as in
the nature of an interim award in his final fee application,
Chandler clearly anticipated that the bankruptcy court would
revisit that award.  It is well established that interim fees
are always subject to disgorgement.  See § 330(a)(5); see also
§ 329(b).  On this record, Chandler can neither claim that
disgorgement of the $10,000 was an unexpected result nor can he
complain that he did not have the opportunity to be heard with
respect to that amount.

There is an alternative reason why the bankruptcy court's
order denying Chandler's fees and ordering disgorgement was
appropriate.  Under § 329(a) and Rule 2016(b), a debtor's
attorney is required to execute and file a supplemental
statement concerning any payment received or compensation
agreement not previously disclosed within fifteen days after
receiving such payment or making any new agreement.  While
Chandler did disclose that he had received the $10,000 amount
through CMITH and applied that to his fees, that disclosure was
inadequate.  After the initially disclosed flat fee agreement,

-27-

1   Chandler never supplemented his disclosure to show that he had

2   entered into a new fee agreement with Debtor whereby he would

3   bill at an hourly rate for services beyond those initially

4   disclosed.  As a sanction for failing to timely and adequately

5   disclose the new fee agreement, the bankruptcy court has the

6   inherent authority to order disgorgement and discretion to deny

7   counsel all fees even if the violation was unintentional.

8   In re Lewis, 113 F.3d at 1045.

9        For all these reasons, we conclude that the bankruptcy

10  court did not abuse its discretion by denying Chandler's fees

11  and ordering disgorgement of amounts previously paid.

12  **C.   Debtor's Cross Appeal of the Fee Order**

13       After denying Chandler's fees and requiring disgorgement,

14  the bankruptcy court stated:

15           I determine that this remedy fully compensates Debtor
             for all harm caused by Chandler's breach of duty.
16           Requiring Chandler to refund the $15,593 he already
             received should be sufficient to cover the fees that
17           Debtor incurred in responding to Chandler's fee
             application, Chandler's motion to distribute proceeds,
18           and Chandler's opposition to Debtor's motion to
             dismiss her chapter 13 case.
19

20       Debtor argues on appeal that this determination prevents

21  her from bringing a malpractice action against Chandler, as it

22  leaves her with no claim for damages.  Debtor complains that she

23  has been further damaged by this appeal because (1) the title

24  company holding the $57,712 has not yet disbursed any of the

25  funds to either CalFHA or Debtor; (2) CalFHA is an oversecured

26  creditor and therefore interest continues to accrue on its deed

27  of trust which is senior to Debtor's homestead; (3) there is an

28  attorneys' fee clause in CalHFA's note and deed of trust; and

-28-

1  (4) Debtor is incurring her own additional attorneys' fees.
2  Finally, Debtor asserts that the bankruptcy court made a
3  procedural due process error when it made the "fully
4  compensates" statement.  Debtor claims she did not have notice
5  that this issue was even being considered and thus never had the
6  opportunity to present evidence on her damages.

7        Debtor's arguments are understandably misplaced.  The
8  court's statements in the Memorandum Decision were not findings
9  because they were not made in support of any order issued by the
10 court.  Debtor never sought any affirmative relief against
11 Chandler through the filing of a motion or otherwise.  Thus, the
12 issues Debtor now complains about were not at stake and were not
13 "actually litigated" or "necessary" to the bankruptcy court's
14 Fee Order.  Further, the Fee Order itself does not mention the
15 "fully compensated" language since only denial of further fees
16 and disgorgement were at issue.  Finally, it is not for this
17 Panel to determine the preclusive effect of any order issued by
18 the bankruptcy court.  That decision is reserved for a court
19 where the issue is presented for decision.  Smith v. Bayer
20 Corp., 131 S.Ct. 2368, 2375 (2011).

21       Debtor's procedural due process argument also is misguided.
22 "The fundamental requisite of due process of law is the
23 opportunity to be heard."  Mullane v. Cent. Hanover Bank & Trust
24 Co., 339 U.S. 306, 314 (1950).  Here, Debtor received notice of
25 the hearing on the fee application and the bankruptcy court held
26 a hearing in which she participated.  Since Debtor fully
27 participated with respect to the only decisions ordered by the
28 court, she received adequate due process.  The cross appeal

1  addresses no error by the bankruptcy court.

2  **D.   The bankruptcy court did not err in denying the
         Distribution Motion.**

3

4      The bankruptcy court denied the Distribution Motion and

5  determined that the sales proceeds held in escrow were property

   of Debtor, subject only to the secured claim of CalFHA.
6

7      Chandler's challenges to the Distribution Order are

8  intertwined with his arguments regarding the breach of duty of

9  loyalty.  For instance, he contends that the bankruptcy court

10 erroneously held that §§ 544 and 551 were not triggered because

11 the adversary complaint did not seek relief under those Code

12 sections and it misinterpreted the plan by finding that it did

13 not preserve CMITH's lien when preservation is automatic.

14 According to Chandler, the amended plan entitled the parties to

15 further proceedings and determinations, nothing more.

16     We addressed these arguments above and will not repeat our

17 response.  In the bankruptcy court's view, one which we do not

18 find clearly erroneous, the terms of the plan provided for the

19 payment of CalFHA's lien with the remaining sale proceeds going

20 to Debtor on account of her homestead exemption.  We discern no

21 error of law or fact in the bankruptcy court's decision to deny

22 the Distribution Motion on this record.

23 **E.   The bankruptcy court did not abuse its discretion in
         granting Debtor's request to dismiss her case.**

24     The Debtor sought dismissal of her case so that she could

25 obtain the release of funds in escrow on account of her

26 homestead exemption.  Chandler contends that her new counsel

27 refused to communicate with him and that the motion to dismiss

28 was filed to obtain the funds in escrow by default and without a

1  hearing.   Furthermore, Chandler asserts that Debtor "made no
2  secret that she was trying to deprive [him] the opportunity to
3  seek court approval of fees and make it difficult for [him] to
4  collect."   Finally, Chandler contends that his preservation
5  arguments had merit and thus dismissal of Debtor's case resulted
6  in an injustice.   We disagree with these contentions.   Again,
7  the terms of the approved first amended plan, as interpreted by
8  the bankruptcy court, together with the other facts in the
9  record show that the bankruptcy court did not abuse its
10 discretion in granting Debtor's motion to dismiss.   Moreover,
11 because of the contested hearing on the motion to dismiss, no
12 funds were obtained by Debtor "by default" or without a hearing.

## VI.   CONCLUSION

14     For the reasons stated above, we AFFIRM the three orders on
15 appeal in all respects.